```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
JUICY COUTURE, INC. and L.C. LICENSING,  :
INC.,                                    :
                                         :
                 Plaintiffs,             :   04 CIV. 7203 (DLC)
                                         :
      -v-                                :        OPINION
                                         :
L'OREAL USA, INC. and LUXURY PRODUCTS,   :
LLC,                                     :
                                         :
                 Defendants.             :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiffs Juicy Couture, Inc. and
L.C. Licensing, Inc.:
William Spatz
Keith Walter
Erica Klein
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

For Defendants L'Oreal USA, Inc. and
Luxury Products, LLC:
Robert Sherman
Danielle White
Eric Bensen
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022

DENISE COTE, District Judge:

　　　L'Oreal USA, Inc. and Luxury Products, LLC ("Lancôme") moved in limine to exclude the direct testimony of James Malackowski ("Malackowski"), an expert for plaintiffs Juicy Couture, Inc. and L.C. Licensing, Inc. ("Couture") in this trademark infringement action.  The motion was granted in part prior to the non-jury trial held from April 4 to 12, 2006.  Couture's claims at trial were denied on the merits through an Opinion issued on April 19,

and it was therefore unnecessary at trial to calculate damages. See Juicy Couture, Inc. v. L'Oreal USA, Inc., 04 Civ. 7203 (DLC), 2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006).  This Opinion sets forth the reasons for the ruling on the Malackowski motion.

At trial, Couture sought to prove that Couture's trademarks JUICY, JUICY COUTURE and CHOOSE JUICY, registered for women's clothing, were infringed when Lancôme adopted the product name Juicy Wear for a long-lasting lipstick.  Couture aspires to enter the cosmetic market someday, but has not yet done so. Malackowski's damage calculation was based on four distinct theories of damages: the cost of future corrective advertising necessary to address consumer misimpressions created by Lancôme's product; the value of hypothetical royalty payments from Lancôme to Couture for the use of its marks; Lancôme's profits on Juicy Wear; and actual harm to Couture in the form of lost profits.

Lancôme argued that Couture cannot recover damages for corrective advertising or through a construction of reasonable royalties.  Lancôme also challenged Malackowski's calculations for damages based on Lancôme's profits.  Couture abandoned Malackowski's fourth theory of damages: profits lost by Couture. Lancôme's motion was granted as to the corrective advertising and royalty measures for damages; it was denied as to Lancôme's profits on Juicy Wear.

## Corrective Advertising

Corrective advertising is a remedy that seeks to counteract

public confusion resulting from trademark infringement.  <u>Lurzer GMBH v. American Showcase, Inc.</u>, 75 F. Supp. 2d 98, 101 (S.D.N.Y. 1998).  In contrast to a claim for damages that seeks reimbursement for a plaintiff's past expenditures in conducting such advertising that was concurrent with the wrong, an award for corrective advertising to be run in the future has been described as "an extraordinary remedy reserved for cases in which a plaintiff lack[ed] financial ability to pay for reparative ads."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Mastercard International, Inc. v. Arbel Corp.</u>, No. 86 Civ. 6801 (SWK), 1989 WL 125781, *8 (S.D.N.Y. Oct. 18, 1989).

    The Tenth Circuit first articulated the "financial ability" limitation on prospective corrective advertising in <u>Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.</u>, 561 F.2d 1365 (10th Cir. 1977).  In <u>Big O</u>, the Tenth Circuit allowed an award for prospective corrective advertising where it was clear that the plaintiff had lacked the financial wherewithal to conduct adequate corrective advertising before trial.  <u>Id.</u> at 1375.

    The use of prospective corrective advertising has been criticized as arbitrary and inefficient.  <u>See</u> J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 30:84 (4th ed. 2006) ("<u>McCarthy on Trademarks</u>").  The Seventh Circuit has opined that an award of corrective advertising should be limited to cases where the plaintiff shows not only that the confusion injured the plaintiff, but also that the "'repair' of the old trademark, rather than adoption of a new one, is the least expensive way to proceed."  <u>Zazu Designs v. L'Oreal, S.A.</u>, 979

3

F.2d 499, 506 (7th Cir. 1992). It reasoned that, where a plaintiff could afford corrective advertising, but did not conduct such a campaign, this is significant proof that either it was not injured or that it is cheaper to use a new name than to correct any confusion. Id. at 507. See also Zelinski v. Columbia 300, Inc., 335 F.3d 633, 640 (7th Cir. 2003).

Prospective corrective advertising damages have been awarded without evidence of a plaintiff's economic hardship by a few courts. See Zelinski, 335 F.3d at 640; Adray v. Adry-Mart, Inc., 76 F.3d 984 (9th Cir. 1995); Novell, Inc. v. Network Trade Ctr., Inc., 25 F. Supp. 2d. 1233 (D. Utah 1998). Each of these cases has involved a situation –- unlike that presented here -- where the plaintiffs sought corrective advertising to rehabilitate trademarks that protected existing products. See Adray, 76 F.3d at 988-89; Novell, 25 F. Supp. 2d at 1244. For example, an award of prospective corrective advertising was approved in Zelinski without consideration of the plaintiff's financial ability because other circumstances explained why the plaintiff had not done any concurrent corrective advertising: the plaintiff's business had been dormant during the infringement. Id. at 637. The award was an effort to compensate the plaintiff for the extra expenditures that would be necessary as he revived his business. Id. at 640.

Malackowski recognizes that Couture does not sell any

4

cosmetics and does not spend any money on advertising,[1] but nonetheless proposes an award of at least $1.4 million to $5.6 million for corrective advertising, based on 25% or 100% of what he calculates Lancôme spent to advertise its lipstick product Juicy Wear in 2004 through September 2005. Malackowski states that the corrective advertising would "remediate confusion and negative product perceptions" but does not specify whether the damages attempt to rehabilitate Couture's current products or prepare Couture for a move into the cosmetics market. Courts have, as Malackowski suggests here, used the infringer's advertising budget as a guide to determine an appropriate damages award. See Big O, 561 F.2d at 1375. Couture fails to explain, however, the relationship between Lancôme's advertising expenses and plaintiff's corrective advertising costs. Couture has not lost profits, lost sales or suffered any damage to its reputation through Lancôme's marketing of Juicy Wear. There is nothing for corrective advertising to correct.

In their brief, plaintiffs essentially admit that corrective advertising is inapplicable in this case because the companies did not and do not compete. Plaintiffs concede that if Couture "had undertaken corrective measures, the advertising likely would only serve to draw more attention to Lancôme's infringing products and, as a result, exacerbate the problem and further

---

[1] Couture does not engage in traditional advertising, but seeks to place its clothing with celebrities so that it is worn on television programs or in movies, or so that celebrities are photographed wearing the clothing in daily life.

damage the Juicy mark for cosmetics.  Under such circumstances, it simply made no sense for Juicy to conduct corrective advertising."

When corrective advertising is awarded based on competing products, there is some reason to believe that the infringer's advertising expenditures will reflect the harm that has been done to the plaintiff's mark and thus may relate to the cost of the advertising necessary to repair the confusion caused by the infringement.  Where there is no competing product, however, an award of prospective corrective advertising is not sufficiently tied to compensation for past infringement to be a reliable measure of damages.  Therefore, even if the Court were inclined to ignore the fact that Couture does not engage in advertising, and that is was financially capable of engaging in corrective advertising in 2004 and 2005 if it believed that Lancôme's introduction of Juicy Wear into the cosmetics market warranted the adoption of an advertising program, Couture has not shown that it is entitled to such damages when it does not even have products that compete with Lancôme's cosmetics.  An award in these circumstances would be nothing more than a windfall.  Lancôme's motion to strike the demand for corrective advertising damages was therefore granted.

## Reasonable Royalty

Malackowski also contends that an award of damages based on a constructive royalty is warranted.  Malackowski's starting

6

point for determining the royalty rate is a "hypothetical negotiation between a willing licensee and a willing licensor at the time of the hypothetical negotiation of a royalty and the likely outcome of such negotiation given their positions." He recognizes that plaintiff L.C. Licensing had approached five cosmetics and fragrance companies and that none of them agreed to a licensing arrangement with Couture. Nonetheless, he concludes that an 8% royalty is reasonable, resulting in a damages award of $1.3 million. In reaching this conclusion he also acknowledges that the industry range of royalty rates are .5% to 7%, but rejects those in favor of his hypothetical rate.

The date Malackowski chooses for the hypothetical negotiation is January 2000, immediately before the launch of Lancôme's lip product JUICY TUBES, but over four years before the sale of Juicy Wear, the product which Couture contends infringes its marks and the sale of which is the basis for its damage claim. As of 2000, as he notes, Couture had not taken any affirmative action to license its marks, and was a young, but growing company. Malackowski looks to several sources to help generate a reasonable royalty rate and then applies a qualitative analysis used in patent law to arrive at his 8% figure.

A royalty is a measure of compensation for past infringement based on the reasonable value of a license to use the trademark that the infringing defendant should have paid. See McCarthy on Trademarks § 30:85. Use of a royalty theory of recovery is generally limited to situations where the parties have had a

7

trademark licensing relationship that facilitates computation of the reasonable royalty. "[W]hen the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 208-09 (3d Cir. 1999). The only case identified by the plaintiff that has allowed the use of a royalty calculation outside of the context of a previous licensing agreement involved an extraordinary situation. In Sands, Taylor & Wood v. Quaker Oats Co., 978 F.2d 947 (7th Cir. 1992), the Seventh Circuit suggested a royalty calculation as a starting point in order to limit an earlier award of damages based on profits that it viewed as "a windfall to the plaintiff." Id. at 963 & n.19.

Couture and Lancôme do not have a previous licensing arrangement on which to base an award for royalty payments. Nor does Couture have any licensing agreement with any cosmetics manufacturer. While Malackowski has endeavored to compute a royalty rate, the speculative nature of his calculations underscores the wisdom of limiting royalty damages to existing or negotiated licensing arrangements. Malackowski's analysis also suffers from a significant factual deficiency: the calculations are based on a hypothetical negotiation of a license beginning in January 2000. By trial, Couture had limited its damage claims to Juicy Wear, which was not launched until July 2004. For these reasons, the defendant's motion to preclude Malackowski's

testimony as it relates to a calculation of a reasonable royalty was granted.

SO ORDERED:
Dated:   New York, New York
         May 18, 2006

                                     _____
                                         DENISE COTE
                                    United States District Judge