```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
JUICY COUTURE, INC. and L.C. LICENSING, :
INC.,                                   :
                                        :
                  Plaintiffs,           :   04 CIV. 7203 (DLC)
                                        :
          -v-                           :   OPINION AND ORDER
                                        :
L'OREAL USA, INC. and LUXURY PRODUCTS,  :
LLC,                                    :
                                        :
                  Defendants.           :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiffs Juicy Couture, Inc. and
L.C. Licensing, Inc.:
William Spatz
Keith Walter
Erica Klein
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

For Defendants L'Oreal USA, Inc. and
Luxury Products, LLC:
Robert Sherman
Danielle White
Eric Bensen
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022

DENISE COTE, District Judge:

On April 19, 2006, following a bench trial, the trademark infringement claims brought by Juicy Couture, Inc. and L.C. Licensing, Inc. ("Couture") against L'Oreal USA, Inc. and Luxury Products, LLC ("Lancôme") were dismissed and judgment was entered for the defendant. Juicy Couture, Inc. v. L'Oreal USA, Inc., 04 Civ. 7203 (DLC), 2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006) ("Opinion").  Lancôme has moved to recover its attorneys' fees

from Couture under the Lanham Act's fee provision, 15 U.S.C. § 1117(a).[1]  The motion is granted in part.

At the time Couture, a clothing manufacturer, filed suit in 2004, based on an allegation of trademark rights in the mark Juicy, it understood it faced an uphill battle.  By the time fact discovery was completed, it understood that it had no chance to prevail on its claims.  Despite that knowledge, it pressed on and searched in vain for a viable theory of trademark infringement, largely abandoning the theories on which it had filed suit.  The trial evidence revealed Couture's motivation for persisting in this litigation.  Although Lancôme's use since 2000 of the mark Juicy in connection with cosmetics had done no damage to Couture's clothing business, Couture wanted to expand into the cosmetics market and knew that it could not do so without confronting Lancôme's well-established use of the word Juicy.  Hoping to force Lancôme to agree to "share" the mark, Couture continued with the litigation.  Its conduct warrants an award of attorney's fees for the period following the close of fact discovery.

## Background

The background and procedural history of this litigation is described in the Opinion and familiarity with that Opinion is

---

[1] Lancôme also relies on the court's inherent equitable powers.  Because the motion for attorneys' fees is granted in part under the Lanham Act, it is unnecessary to reach this alternative ground.

assumed.  Only those facts relevant to the instant motion will be summarized here.

Couture's primary business is women's clothing.  Couture was launched in 1989 as Travis Jeans.  Beginning in 1996, Couture began to use the marks JUICY and JUICY COUTURE and from that time has built is business around the name Juicy.

Couture had never sold or marketed cosmetics, but it hoped eventually to become a lifestyle brand and sell Juicy-branded fragrances with some associated cosmetics.  It tried but was unable, however, to find a willing licensing partner to create a line of Couture cosmetics and no cosmetics line has been launched.

Lancôme is a leading maker and seller of cosmetics and fragrances.  Lancôme decided to use the word Juicy as a name for a lip gloss, JUICY TUBES, in 1999.  Couture had only modest success at that time and Lancôme had no knowledge of Couture or its products.  JUICY TUBES was launched in 2000 as part of a seasonal collection and became a permanent part of Lancôme's product line in 2002.  Lancôme introduced a second Juicy product, a lipstick called JUICY ROUGE, in 2003.  JUICY ROUGE was introduced to the United States market through a promotion called Juicy [Gossip].  In 2004, Lancôme launched four more Juicy products, Juicy Vernis (a nail polish), Juicy Crayon (a lip gloss pencil), Juicy Tubes Pop (a lip gloss with a tingling sensation), and Juicy Wear (a 2-step lipstick).  Juicy Vernis, Juicy Crayon and Juicy Rouge were launched in the United States in May 2004

through a promotional campaign called Juicy Pop.  Juicy Wear was launched in July 2004.

Couture's lawsuit was the culmination of an escalating conflict between Couture and Lancôme over the word Juicy which began in Europe in 2003, on the eve of Couture's acquisition by Liz Claiborne in April 2003.  Beginning in February of that year with an opposition to Lancôme's application to register Juicy in France for the class of cosmetics, Couture regularly opposed trademark registrations filed by Lancôme in Europe for product names containing the word Juicy.  Brief settlement negotiations took place in July 2004 but proved futile.

As Lancôme developed its line of Juicy products it systematically filed trademark registrations in the United States.  Couture never opposed any of Lancôme's United States registrations until July 2004, after the breakdown of the settlement discussions in Europe.  Couture filed its Lanham Act lawsuit on September 9, 2004 ("Complaint").  As of that time, two Lancôme Juicy marks had been published without any opposition from Couture.  Lancôme obtained registrations for JUICY TUBES in April 2001, and for JUICY ROUGE in April 2005.

The Complaint asserted rights in Couture's registered trademarks JUICY, JUICY COUTURE and CHOOSE JUICY as well as common law rights in five slogans ("Slogans") that Couture used on t-shirts.  The Complaint alleged that Lancôme's sale of six products, JUICY TUBES, JUICY ROUGE, Juicy Tubes Pop, Juicy Crayon, Juicy Vernis, and Juicy Wear, and Lancôme's use of Juicy

4

and Juicy Pop to describe a line of cosmetics and fragrances violated Couture's trademark rights.  The Complaint made seven claims: trademark infringement, false designation of origin and unfair competition, and trademark dilution under the Lanham Act; deceptive acts and practices and trademark dilution under New York General Business Law; and trademark infringement and unfair competition under New York common law.

     Following the close of fact discovery, motion practice began.  First, on November 16, 2005, Lancôme moved both for partial summary judgment precluding a monetary recovery, because Couture could not show bad faith, and for summary judgment on its affirmative defense of laches.  On December 6, 2005, Lancôme served, but did not file, a motion for Rule 11 sanctions addressed to the state law claims of trademark dilution and deceptive acts and practices.  When Couture did not agree to dismiss those claims, on January 27, 2006, Lancôme moved for summary judgment on the claims.  The summary judgment motion achieved what the Rule 11 motion did not: on February 10, the parties stipulated to a voluntary dismissal of these state law claims.

     Oral argument on the remaining two summary judgment motions was held on February 15, 2006.  During the course of the argument, Couture substantially altered its case.  Couture limited its claims to three theories of infringement: Lancôme's sale of the product named Juicy Wear in 2004, its use of the term Juicy in its Juicy Pop marketing campaign in 2004, and its

5

display of cosmetics products bearing the name Juicy together on a Lancôme counter to create the impression that there is a Juicy collection.  Couture abandoned any claims that the sale of JUICY TUBES, JUICY ROUGE, Juicy Tubes Pop, Juicy Crayon, or Juicy Vernis infringed its rights.  When it came to the question of its entitlement to damages (as opposed to its claim for Lancôme's profits) Couture asserted that it had been damaged because Lancôme (1) had sold or given away flip-flops and tote bags that are "products which Juicy Couture sells under its trademark," exposing Couture to lost sales, and (2) had sold a fragrance,[2] "which is a product which is soon to be launched" by Couture, placing price pressure on Couture and eroding its potential market.[3]  Although expressing extreme skepticism that Couture could defeat the affirmative defense of laches or show Lancôme's bad faith, the Court denied the two remaining summary judgment motions.[4]

---

[2] Lancôme's fragrance was called Lolli Pop.

[3] In answer to the Court's inquiry, plaintiff's counsel represented that it had an expert report that quantified a damage claim based on these theories.  That was not an accurate representation.

[4] The fact that Couture had identified issues of fact that were in dispute that prevented Lancôme from prevailing on its summary judgment motions should be of little comfort to Couture in defending against this motion.  The role of the court at the summary judgment stage is not to judge the merits of the case, but to determine whether material issues of fact are in dispute. See IMAF, S.p.A. v. J.C. Penney Co., 26 U.S.P.Q.2d 1667, 1676-77 (S.D.N.Y. 1992) (awarding attorneys' fees to defendant where plaintiff survived defendant's motion for summary judgment). When it came time to judge the facts, Couture had essentially no case and its claims were utterly devoid of merit.

In response to Couture's novel theory that the presentation of non-infringing products in close proximity on a store counter could support an infringement claim, Lancôme brought a motion <u>in limine</u>.  Couture then abandoned the theory, rendering the motion moot.  Lancôme's motions in limine to strike the testimony from the four Couture experts were largely granted.  The testimony from two experts was stricken in its entirety, the testimony from one was stricken in part, and the testimony from the survey expert, which is described below, was accepted only because the trial was a bench rather than jury trial.  See <u>Juicy Couture, Inc. v. L'Oreal USA, Inc.</u>, 04 Civ. 7203 (DLC), 2006 WL 1359955, *26 (S.D.N.Y. May 18, 2006).[5]

By the time of trial, Couture's claims rested on its assertion of common law rights in the five Slogans and rights associated with three registered trademarks.  It asserted that Lancôme infringed those rights by adopting the mark Juicy Wear as a product name, and by using the words juicy, Juicy Pop and Juicy Gossip in advertising and promotions in 2003 and 2004 in connection with two in-store promotions.  It sought Lancôme's profits based on the sales of Juicy Wear and an injunction preventing Lancôme from using Juicy Wear as the name or trademark for any product; using juicy alone or in combination with another word or phrase that means apparel or has an apparel connotation; using the word juicy alone or in combination with any word or

---

[5] Couture's motion in limine to preclude Lancôme from asserting an advice of counsel defense at trial was also granted.

phrase that means bags or connotes bags; and promoting, advertising or marketing its line of Juicy products with signs, displays, or advertising which conspicuously or dominantly present the word juicy alone or in combination with another word which in the aggregate is not the trademark or name of a Lancôme Juicy product.

At trial, all of Couture's claims were rejected. The Opinion found that Couture did not have trademark rights in the five Slogans.[6] Opinion at *17-18. As for Lancôme's sale of Juicy Wear, after analyzing the eight Polariod factors, the Opinion found that Couture was unable to establish a likelihood of confusion with Couture's registered marks.[7] Id. at *29. As for Lancôme's use of the words Juicy, Juicy Gossip and Juicy Pop in advertising and two promotions in 2003 and 2004, the Opinion noted that Couture's theory was "hard to discern" since it disclaimed any interest in pursuing a false advertising claim, had withdrawn any claim that the sales of the products associated

---

[6] Although Couture had asserted claims at trial based on these Slogans, it did not address either the legal or factual basis for such claims in any of its trial submissions, and relied on the Court to find and analyze the law and evidence that applied. Id. at *17 n.19.

[7] The fact that the Opinion found that four of the eight Polaroid factors favored Couture, Opinion at *19-29, does not detract from the fact that Couture's case was absolutely devoid of merit. While each of the Polaroid factors must be considered by the court in assessing a likelihood of confusion, the "analysis is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." Star Indus. Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 384 (2d Cir. 2005). Based on this standard, Couture had no hope of success.

with either promotion infringed its rights, and during the trial withdrew any contention that Lancôme had acted in bad faith before 2004.  Id. at *30.  In any event, for several reasons, Couture's claims regarding these word choices were also rejected.

Finally, while it was unclear whether Couture continued to assert any claims regarding Lancôme promotional flip-flop and tote bag gifts, it became clear at trial that that in-store gift-with-purchase program had occurred as part of a two-week Juicy Pop in-store promotion in 2004 and that Couture did not contend that the sale of any Lancôme Juicy product associated with the promotion violated its rights.  Again, Couture failed utterly to show that this short summer promotion violated its rights, for instance, by leading consumers to believe that Couture was a co-sponsor of the event.  Id. at *32.

Because Lancôme's assertion of laches brought important issues in the case into focus, the Opinion also ruled on that affirmative defense even though Couture had failed to prevail on any of its claims.  Couture did not contest that it had sat on its rights in the United States.  Juicy Wear, the only product challenged by Couture at trial, was Lancôme's sixth Juicy product, introduced into the United States five years after Lancôme offered its first Juicy product for sale.  The Opinion found that Lancôme had shown each of the elements necessaary to establish its affirmative defense and that Couture's request for injunctive relief, even if narrowly tailored, would have been barred in the event Couture had shown a likelihood of confusion.

9

Id. at *35.

Couture's case was particularly deficient in regards to two of the Polaroid factors: actual confusion and bad faith. Couture attempted to establish actual confusion through a consumer perception survey conducted by a survey expert, Philip Johnson ("Johnson"). Johnson's survey was fundamentally flawed for several reasons -- it did not replicate market conditions, its pool of respondents was skewed towards Couture's customer base, and it asked an unnecessary introductory question about clothing. Id. at *25-26. A better designed survey introduced by Lancôme showed virtually no evidence of confusion.

Couture was similarly unsuccessful in proving bad faith. Because at trial Couture limited itself to a claim against Juicy Wear, it was left with the difficult task of showing how Lancôme's choice of the name Juicy Wear was made in bad faith, when its development of the rest of its Juicy line had been undertaken in good faith. As noted, during the trial, Couture admitted that Lancôme had acted in good faith through 2003. Moreover, Couture's expert took the view that the word Wear when combined with Juicy added no additional likelihood of confusion. Id. at *28.

In the end, Couture could only muster two pieces of evidence to prove bad faith, both of which were entirely undercut by other evidence presented at trial. First, Couture pointed out that Lancôme had failed to run a trademark search for Juicy Wear before applying to register it as a trademark. Lancôme had just

run other trademark searches, however, for other Juicy products. Second, Couture pointed to evidence of Couture's growing popularity during the time that Lancôme finalized the decision to name its 2-step lipstick Juicy Wear.  There was no evidence whatsoever, however, that Lancôme paid any attention to clothing companies in making its marketing decisions.  Id.

## Discussion

Pursuant to Section 35 of the Lanham Act, a court may award "reasonable attorney fees" in "exceptional cases."  15 U.S.C. § 1117(a).  The Second Circuit has held that a court should award such fees "only on evidence of fraud or bad faith."  Gordon & Breach Science Publishers S.A. v. American Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) (per curiam) (citation omitted).  A finding of bad faith is warranted "when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."  Baker v. Health Mgmt. Sys., Inc., 264 F.3d 144, 149 (2d Cir. 2001) (defining bad faith in the context of a court's inherent power to award attorneys' fees).

Bad faith exists where a lawsuit is "initiated for reasons other than a sincere belief in the merits of the underlying claims," and to "serve ulterior business motives."  Universal City Studios, Inc. v. Nintendo Co., 615 F. Supp. 838, 864 (S.D.N.Y. 1985), aff'd, 797 F.2d 70 (2d Cir. 1986).  In Nintendo, the plaintiff sought to strengthen its position in negotiations

with a licensee and join in a stream of profits from the sales of a highly profitable video game. Id.; see also Nintendo, 797 F.2d at 77. The Honorable Milton Pollack of this district has also awarded fees to a Lanham Act defendant where there was a substantial basis to infer that the suit was initiated as a "competitive ploy." Mennen Co. v. Gillette Co., 565 F.Supp. 648, 657 (S.D.N.Y. 1983). In Mennen, the defendant had used the trade dress at issue for five years before its rival brought suit. Id. at 652. The Second Circuit endorsed the approach to attorneys' fees taken in Mennen, noting that Judge Pollack's reasoning supports a finding of bad faith. Nintendo, 797 F.2d at 77.

Courts have also inferred bad faith where a plaintiff's claims are meritless. See New Sensor Corp. v. CE Distribution LLC, 367 F.Supp. 2d 283, 288 (E.D.N.Y. 2005) (awarding fees and noting that plaintiff "knew or should have known that its claims were not well grounded in fact" and that "one can only speculate about the motives which prompted its suit"); IMAF S.p.A. v. J.C. Penney Co., Inc., 26 U.S.P.Q.2d 1667, 1677 (S.D.N.Y. 1992) (awarding fees in light of "absolute failure to make a sincere attempt validly to establish an essential element" of a Lanham Act claim); Diamond Supply Co. v. Prudential Paper Prods., 589 F.Supp. 470, 476 (S.D.N.Y. 1984) (observing that plaintiff's evidence fell "woefully short of proving an intent to infringe); Viola Sportswear, Inc. v. Mimun, 574 F.Supp. 619, 621 (E.D.N.Y. 1983) (noting that case was "without merit").

When Couture filed suit in September 2004 it faced

significant hurdles in proving any claim of infringement and no chance of prevailing on a dilution claim.  It knew that Lancôme was using the mark Juicy in the United States in a market that Couture had never entered and that Lancôme had been doing so for years without objection from Couture.  Thus, Couture knew that there was every indication that Lancôme had adopted the mark in good faith and would prevail on a defense of laches, and that Couture would be unable to obtain any injunction.  Couture also understood that it would be unable to show any loss of sales due to Lancôme's use of the mark, and that a claim for damages would require it to prove intentional infringement in order to obtain Lancôme's profits.  See Juicy Couture v. L'Oreal USA, Inc., 04 Civ. 7203 (DLC), 2006 WL 559675, *1 (S.D.N.Y. Mar. 7, 2006).

On the other hand, Couture could point to an expansion in the Lancôme's Juicy line of products in 2003 and 2004, see Opinion at *6-7, that coincided with a rise in Couture's popularity.  Id. at *10.  Put in its best light, when Couture filed suit it may have hoped to find evidence that Lancôme expanded its Juicy product line because of a desire to exploit the goodwill associated with Couture's Juicy trademark.

Whatever suspicions Couture may have had when it filed suit in September 2004 about the motivations for Lancôme's choices in naming their products were not borne out in the discovery process.  Instead, the evidence produced by Lancôme documented the legitimate considerations that led to the choice of the names of the various products in the Juicy line, including the choice

of the name Juicy Wear in late 2003.  None of the evidence revealed any awareness of Couture, much less any intention to capitalize on its goodwill.  For example, Odile Roujol, Lancôme's deputy brand manager in the United States from January 2003 until February 2005, was unequivocal in her deposition that Lancôme did not consider clothing companies relevant to its business.

In its opposition to this motion, Couture continues to argue that its suspicions about Lancôme's motives in choosing Juicy Wear were plausible, noting that when it filed suit it "did not have the benefit of discovery."  While that is true, it does nothing to explain why Lancôme continued to press its theory once it had the benefit of discovery.

By October 2005, Couture had exhausted the fact discovery process and had deposed all of the relevant decision makers at Lancôme without turning up any evidence to support bad faith. While bad faith is only one of the eight <u>Polaroid</u> factors that are used in assessing likelihood of confusion, it was critical to Couture's affirmative case and its defense against the laches affirmative defense.

In late September or early October 2005, Couture also received the results of the Johnson consumer perception study.[8] The flaws of Johnson's study were explored at length in the Opinion and will only be summarized here.

The most fundamental flaw in the study, the failure to

---

[8] Johnson's survey was conducted between September 8 and September 21, 2005.

present the products as they were seen in the marketplace, must have been readily apparent to Couture's experienced counsel.  Of the over 300 likelihood of confusions surveys that Johnson had designed, this survey was his first face-to-face survey in which the actual product was not shown to respondents.  Id. at *25.  Just one year prior to Johnson's survey, the Second Circuit had rejected a survey that (like Johnson's survey) was no more than a word association test.  See Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 168 (2d Cir. 2004).  Couture contends that it was entitled to rely on the survey because of Johnson's credentials.  As Couture's counsel well knows, the admissibility of a survey is judged on the merits of the survey design and execution, not the credentials of the survey designer.

Couture's inability to uncover evidence of bad faith was also fatal to Couture's ability to overcome the affirmative defense of laches.  Couture possessed all of the facts that were critical to Lancôme's laches defense on the day it filed suit: it had been aware of Lancôme's use of Juicy since at least 2001, and it had failed to take any step to oppose Lancôme's systematic expansion of its Juicy line in the United States until mid-2004.

Couture's only tenable defense to laches hinged on its suspicions about Lancôme's motives.  Couture's inability to discover any evidence of bad faith during discovery made it inevitable that Lancôme would prevail on its assertion of laches.

In sum, in October 2005, Couture was aware that it had no evidence to support a claim of either bad faith or actual

15

confusion. It also was aware that it could not overcome Lancôme's laches defense. Taken together, Couture had lost any basis for a good faith belief that its claims had merit or that they would succeed at trial. In spite of the collapse of its case, from November 2005 through the end of trial, Couture barreled ahead. It limited the scope of its claims and shifted its theories, but found nothing of merit to pursue. If anything, its decision to abandon any claim for damages from the sale of Lancôme's first five Juicy products, and its admission that Lancôme's activities before 2004 were in good faith made the assertion of its remaining claims untenable. There was simply no legal or factual basis to find that Lancôme could not adopt a sixth Juicy product in the sixth year of development of a Juicy line of products. This is simply not a case where the plaintiff identified a core, valid claim to take to trial, and made a tactical decision to abandon weaker claims. After discovery, Couture knew that it had no evidence to succeed on any claim.

So, why did Couture persist? Couture wanted to wring an agreement from Lancôme that Couture could enter the cosmetics market with Juicy-branded products. It sought co-existence with Lancôme and did not expect that it could defeat Lancôme's right to remain in the market. It chose to use litigation to achieve a commercial objective when it had no valid claim of injury.[9]

---

[9] It was, of course, entirely premature for Couture to bring a declaratory judgment action, since it had not taken sufficient steps towards development of a cosmetics line and had not been threatened with litigation by Lancôme.

Seeking leverage in the negotiation of a licensing agreement or for entry into a new market is not a valid ground for continuing litigation when a party knows that its claims are devoid of merit. Couture acted in bad faith and for an improper purpose from at least the close of fact discovery.

Couture points out that in Momentum Luggage & Leisure Bags v. Jansport, Inc., 00 Civ. 7909(DLC), 2001 WL 1388063 (S.D.N.Y. Nov. 8, 2001), this Court declined to impose attorneys' fees on either the client or his attorney despite their misuse of the discovery process, repetitive motion practice and baseless claims. There was much to condemn in the prosecution of the plaintiff's case in Momentum, and it would have been entirely reasonable for another judge to impose sanctions. The award of attorneys' fees in a Lanham Act action is reserved, however, for the extraordinary case, and the determination of what justifies that extraordinary relief is necessarily a matter of judgment. In Momentum, for several reasons described in the decision denying the award,[10] the determination was made that an award of fees was not warranted. Here, for the reasons already described,

---

[10] In Momentum, the Court had imposed sanctions during the litigation: it precluded the plaintiff from offering certain evidence and from taking certain discovery as a sanction for discovery abuses. Momentum Luggage, 2001 WL 1388063 at *3-4. When it came to the post-judgment motion for an award of attorney's fees, although finding that the plaintiff's claims were baseless, the Court could not determine that they had been brought in bad faith, largely because the plaintiff was so poorly represented by counsel. "The question becomes, however, whether [the attorney's] conduct was the result of bad lawyering or bad faith." Id. at *7. The Court also noted that any sanctions imposed on counsel would have to be modest in light of his solo practice. Id.

a partial award is warranted.

Conclusion

Lancôme's motion for an award of attorneys' fees is granted in part. Lancôme is entitled to reasonable attorneys' fees for litigation costs incurred after the close of fact discovery.

SO ORDERED:
Dated:   New York, New York
         September 11, 2006

_____
DENISE COTE
United States District Judge